AVIS RENT-A-CAR SYSTEM, INC. v CITY OF ROMULUS

1. CONSTITUTIONAL LAW—STATUTES—LOCAL ACTS—POPULATION CLAS-
    SIFICATION—PURPOSE OF STATUTE—REASONABLE RELATIONSHIP.

   The Legislature is constitutionally prohibited from passing a local
   or special act where a general act can be made applicable, but
   a statute does not become local or special because it contains a
   population classification if that classification bears a reasonable
   relationship to the purpose of the statute and the statute
   applies whenever the population classification is met (Const
   1963, art 4, § 29).

2. CONSTITUTIONAL LAW—STATUTES—TAXATION—AIRPORTS—CONCES-
    SIONAIRES—POPULATION CLASSIFICATION—PURPOSE OF STATUTE—
    REASONABLE RELATIONSHIP.

   A statute which places restrictions on tax exemptions for opera-
   tors of concessions at airports located in counties of more than
   1,000,000 population is invalid, because the population classifi-
   cation bears no reasonable relationship to the purpose of the
   tax exemption which is to promote the development of airport
   facilities (MCLA 211.181).

3. CONSTITUTIONAL LAW—TAXATION—UNIFORMITY OF TAXATION—
    CLASSIFICATIONS—REASONABLE BASIS.

   The Michigan Constitution requires uniformity of taxation and
   the Legislature may not treat differently for tax purposes
   things which are essentially the same; a classification which
   seeks to treat property differently for tax purposes must have a
   reasonable basis (Const 1963, art 9, § 3).

4. CONSTITUTIONAL LAW—STATUTES—CLASSIFICATIONS—BASIS—SUB-
    STANTIAL DIFFERENCES—NATURAL DIFFERENCES.

   Legislative classifications must be based upon substantial and
   natural differences which reasonably suggest the propriety of
   different treatment.

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 39, 41–48.
[2, 5] 71 Am Jur 2d, State and Local Taxation §§ 309, 320.
[3] 71 Am Jur 2d, State and Local Taxation §§ 170–190.
[4] 16 Am Jur 2d, Constitutional Law § 494 *et seq.*

5. CONSTITUTIONAL LAW—STATUTES—TAXATION—AIRPORTS—CONCES-
SIONAIRES—CLASSIFICATIONS—DIFFERENCES IN TREATMENT.

A statute which provides tax-exempt status to a lessee or user of property at an airport who qualifies as a concessionaire by having "the exclusive right and duty to render a necessary or customary service", and which is limited in application to airports in Wayne County because of a classification based upon population, is constitutionally invalid because it treats those lessees and users at Wayne County airports differently for tax purposes than at airports in the other counties, without any real or substantial differences which reasonably suggest the propriety of such different treatment (Const 1963, art 9, § 3; MCLA 211.181).

Appeal from Wayne, Richard M. Maher, J. Submitted June 11, 1975, at Detroit. (Docket No. 21134.) Decided October 14, 1975. Leave to appeal applied for.

Complaint by Avis Rent-A-Car Systems, Inc. against the City of Romulus, Wayne County, and Romulus Community Schools for recovery of taxes paid to defendants under protest. Summary Judgment for plaintiff. Defendants appeal. Affirmed.

*Barris, Sott, Denn & Driker* (by *Eugene Driker* and *Michael McLoughlin)*, for plaintiff.

*Young, O'Rourke, Bruno & Bunn,* for defendant City of Romulus.

*Aloysius J. Suchy,* Corporation Counsel, and *John K. Godre,* Assistant Corporation Counsel, for defendant Wayne County.

*Miller, Canfield, Paddock & Stone* (by *Samuel J. McKim III* and *Thomas P. Hustoles)*, for defendant Romulus Community Schools.

Before: BRONSON, P. J., and V. J. BRENNAN and D. E. HOLBROOK, JR., JJ.

V. J. BRENNAN, J. Defendants, City of Romulus, County of Wayne, and Romulus Community Schools, (hereinafter defendants) appeal as a matter of right from an order of summary judgment in favor of plaintiff in an action brought to recover taxes paid under protest to defendants.

Plaintiff, Avis Rent-A-Car System, Inc, is a foreign corporation which operates a car rental concession at Metropolitan Airport, located in the City of Romulus, County of Wayne, Michigan. Plaintiff had entered into an agreement dated September 16, 1966 with the Board of County Road Commissioners of the County of Wayne, under the terms of which plaintiff was granted "the right to conduct and operate an exclusive 'drive-it-yourself' Automobile Rental Concession, in common with two others, at the Airport, for the convenience of the traveling public". Pursuant to said agreement, plaintiff constructed four rental counters, two "pick-up" areas on airport property, and a service building on the airport grounds which was leased from the County Road Commissioners. It is the status of the service building for tax purposes which has been the subject of continuing litigation between the parties.

In 1966, Romulus Township sought to tax Avis for the "user or lessee portion" of the service building site pursuant to MCLA 211.181; MSA 7.7(5). Avis commenced suit against the Township in 1967 seeking a declaratory judgment that the site was tax exempt under the statute as a "use * * * by way of a concession in or relative to the use of a public Airport, park, market, fairground or similar property which is available to the use of the general public * * * ".

During the litigation the Michigan Supreme Court decided the case of *Kent County v Grand*

*Rapids,* 381 Mich 640; 167 NW2d 287 (1969), which construed the statute in question in a manner favorable to plaintiff. Plaintiff thereupon moved for a summary judgment on the ground that there was no genuine issue of material fact and that plaintiff was entitled to relief as a matter of law. On May 12, 1970, the circuit judge filed his opinion granting plaintiff's motion for summary judgment and holding that the service building site was exempt from taxation by virtue of the specific exemption contained in MCLA 211.181; MSA 7.7(5). A judgment was entered accordingly, from which the Township of Romulus perfected an appeal to this Court, but the appeal was later dismissed by stipulation.

Late in 1971, the City (formerly Township) of Romulus sought to levy a tax on plaintiff's service building as "personal property". Again, plaintiff filed suit and brought a motion for summary judgment, on the ground that the provisions of the general property tax act, upon which Romulus sought to levy a personal property tax on a service building site had been declared unconstitutional by the Michigan Supreme Court in *Continental Motors Corp v Muskegon Twp,* 376 Mich 170; 135 NW2d 908 (1965). A consent judgment was entered in favor of plaintiff on July 19, 1972.

Meanwhile, efforts by the City of Romulus to persuade the Michigan Legislature to amend the applicable statute proved successful. The amendment, 1970 PA 174, MCLA 211.181(2); MSA 7.7(5)(2), purported to establish new criteria for tax exemption for concessionaires. The amendment added the following language:

"(2) In counties of over 1,000,000 in order to determine whether a lessee or user at an airport is a concessionaire within the provisions of this act, and whether

the use of real property used in connection with the concession operation is essential to the concession operation so as to come within the exception contained in this act, it is required that the following basic tests be met:

"(a) It shall have the exclusive right and duty to render a necessary or customary service, based on a contract entered into requiring that it render goods or services either to the grantor or to the general public on behalf of the grantor;

"(b) The service rendered must be available to the general public on a nondiscriminatory basis;

"(c) Use of real property in connection with a service concession must be a necessary and integral part of the concession operation."

The enactment of 1970 PA 174 resulted in a third suit brought by plaintiff to have the service building site declared tax exempt. In its motion for summary judgment, plaintiff contended that its use of the service building site satisfied the three criteria imposed by 1970 PA 174, that 1970 PA 174 was unconstitutional in that it violated the requirements of Article 9, § 3 of the Michigan Constitution, which requires that property taxes shall be uniform in application, and that 1970 PA 174 is a "local or special act" and is violative of Article 4, § 29 of the Michigan Constitution. The circuit judge agreed with each of plaintiff's contentions and granted summary judgment accordingly. From this judgment, defendants have perfected the instant appeal.

The Michigan Legislature in 1945 enacted the Michigan Aeronautics Code, MCLA 259.1 *et seq.;* MSA 10.101 *et seq.,* for the purpose of furthering "the public interest and aeronautical progress". The act provided for the creation of the Michigan Aeronautics Commission and the Michigan Department of Aeronautics charged with the duty, *inter*

*alia,* of developing a state-wide system of airports. 1945 PA 329 provided for the creation of the Michigan Aviation Matching Fund, "for the purpose of matching the political subdivisions of the state in the construction and improvement of publicly-owned airports and landing fields, and in assisting the several political subdivisions in matching federal funds, within the State of Michigan". MCLA 259.501.

In 1953 the Michigan Legislature enacted 1953 PA 189, MCLA 211.181; MSA 7.7(5), providing for the taxation of lessees and users of tax-exempt property, "except where the use is by way of a concession in or relative to the use of a public airport * * * ". Finally, as noted, *supra,* our Legislature passed 1970 PA 174, amending 1953 PA 189 (MCLA 211.181; MSA 7.7[5]), providing for stricter standards in qualifying for concessionaire status and the concomitant tax exemption at a public airport.

From the foregoing excerpts from Michigan statutes, the public policy of this state regarding aeronautics is clear. Since the development of aeronautics is considered to be very much in the public interest, safe and convenient air travel is to be encouraged. Airport development is to be fostered by the use of matching funds and by providing tax incentives to encourage businesses to provide necessary customer services for the convenience and comfort of air travellers. By its most recent act, 1970 PA 174, the Michigan Legislature has apparently determined that at least one airport in the state, Wayne County Metropolitan Airport, has reached such a point of development that tax exemptions previously given to concessionaires may now be restricted without contravening settled state policy. Plaintiff in the instant case is

contending, in effect, that the Michigan Legislature has sought to implement this new policy by the enactment of a statute which is constitutionally invalid. The learned circuit judge held that plaintiff was correct. We agree.

Plaintiff argues that 1970 PA 174 contravenes the Michigan Constitution in that it is a local or special act. Article 4, § 29 of the Michigan Constitution provides:

"The Legislature should pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question."

The parties agreed that a population classification which limits the present application of a legislative act does not make the act local or special if the population classification bears a reasonable relationship to the purpose of the statute and the statute applies whenever the population classification is met. See *Airport Community Schools v State Board of Education,* 17 Mich App 574; 170 NW2d 193 (1969), and cases cited therein. The decisive issue in the instant case, therefore, is whether the population classification in 1970 PA 174 has a reasonable relationship to the purpose of the statute. See *Monroe v Judge of Police Court of Grand Rapids,* 311 Mich 76; 18 NW2d 371 (1945).

We fully agree with the well-reasoned opinion of the circuit judge, and we quote at length and with approval therefrom.

"This Court can see absolutely no reasonable relationship between the population of a county in which an airport is located and the entitlement of a concessionaire in that airport to tax exempt status under Act 189. As this Court stated in its 1970 Opinion, the entire

purpose of Act 189 seems to be to encourage the development of airports. Obviously, the Board of County Road Commissioners deemed it essential to have Avis as a concessionaire at the Airport, and this Court earlier observed that, in this day and age, a car rental concession is a necessity for the efficient operation of a large municipal airport.

"The effect of Act 174, however, is to discourage airport development in heavily populated areas, the very areas that most need such development. Compare *Wayne Circuit Judges v Wayne County,* 383 Mich 10 [172 NW2d 436] (1969), and *Wayne County [Board of Review] v Great Lakes [Steel] Corporation,* 300 US 29 [57 S Ct 329; 81 L Ed 485] (1937).

"Failing to reply to plaintiff's argument that state policy is to encourage airport development in the state's most populated areas, Romulus seeks to justify the exception of Act 174 on an economic basis. In its brief, Romulus cites statistics dealing with airport *traffic,* and argues that, in airports with substantial traffic, such as Metropolitan Airport, concessionaires will locate with or without tax exemption, whereas in airports of less traffic, the need for a tax exemption is present.

"Whatever the economics of locating at airports may be, it is clear to this Court that Romulus has, by its argument, proved the inherent defect in Act 174. This is made clear by the fact that there is no correlation between the county in which an airport is located and the traffic which passes through the airport. An example suggested by Avis brings the point home. Plaintiff presents an affidavit of the assistant manager of Willow Run Airport, to which is attached a map of the airport itself. The affidavit and map disclose that the terminal facilities at Willow Run Airport (which, of course, was the principal public commercial airport prior to the development of Metropolitan Airport), are located in Washtenaw County, whereas the runways, etc. are located in Wayne County. Since Willow Run was once the busiest airport in this state, it would, under defendant's theory, attract concessionaires without a tax exemption. But, since its terminal is in a county with under one million people, Act 174 would nevertheless give those concessionaires that very exemption!

"Whereas Romulus tries to justify Act 174 on important differences among airports based on traffic, Act 174 is not at all directed to *traffic,* but to county *population,* which is quite another thing.

"The Court is particularly mindful of the decision in *Great Lakes Steel Corporation v Lafferty,* 12 F Supp 55 (E.D. Mich 1935), where a three-judge federal district court held unconstitutional a state statute abolishing township boards of review, except in counties having a population of more than 500,000. The court there held that the statute was obviously directed only at Wayne County, but that size and population did not present a peculiar need for taxation purposes. Particularly appropriate here is the following quotation from Judge Tuttle, speaking for the court, as follows:

" '[T]he only county in Michigan having a population of more than 500,000 is the defendant county of Wayne, whose population according to the last federal census was 1,888,946; the next most populated county in the state being Kent county, with a population of 240,511. Hence, it is obvious that this statute was intended by the Michigan Legislature to be applicable only to Wayne county, at least for many years to come. The question, therefore, presented in this connection is whether there is such a difference, resulting from population, between Wayne county and the other eighty-two counties in Michigan, as affords a reasonable basis for the difference, prescribed by this statute * * * and after careful consideration of the numerous extensive, and exhaustive briefs of the parties, *we are unable to find any such difference, or any reasonable relation between the population of Wayne county, as distinguished from that of the other counties in the state, and the object of this statute.'* (Emphasis added.)

"This Court can see no reasonable relationship between county population and the appropriateness of tax exemption. In keeping with a long line of cases cited above and many others cited in plaintiff's brief, the Court agrees with the plaintiff here that Act 174 violates Article IV, § 29 of the Michigan Constitution, and is, therefore, invalid."

Defendant school district argues that the popula-

tion classification effectively "singles out" Metropolitan Airport for special treatment. We disagree. We take judicial notice of two other municipal airports in Wayne County, neither of which are comparable to Metropolitan Airport. We refer to Detroit City Airport and Grosse Ile Municipal Airport. Detroit City Airport serves the needs of the public in small commuter airlines, charter services, flying schools, corporate and business aircraft, and the various other needs of general aviation. Grosse Ile Municipal Airport, using the facilities of the former Grosse Ile Naval Air Station, is much smaller, and serves general aviation needs in the Detroit downriver area. We do not think that the legislative purpose of encouraging the development of airports is served by a statute which would tend to discourage the development of Detroit City and Grosse Ile Municipal Airports or similar airports in counties which in the future exceed 1,000,000 population. We think the Legislature by 1970 PA 174 intended to restrict tax exemptions at airports whose development reaches a stage at which such tax incentives are no longer needed to serve the public interest. This being the case, we fully agree with the circuit judge that there is "no reasonable relationship between county population and the appropriateness of tax exemption".

Plaintiff further contends that 1970 PA 174 is constitutionally invalid as taxation which is not uniform. Article 9, § 3 of the Michigan Constitution provides, in pertinent part: "Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates."

Uniformity of taxation as required by the Michigan Constitution means that the Legislature may

not treat differently for tax purposes things which are essentially the same. See *Teagan Transportation Co v Board of Assessors of Detroit,* 139 Mich 1; 102 NW 273 (1905). There must be a reasonable basis for a classification which seeks to treat property differently for tax purposes. The following passage from 1 Cooley, Taxation (4th Ed), § 340, p 723, is instructive:

"The rule allowing classification for purposes of taxation is always coupled with the proviso 'if all of the same class are taxed alike.' Discrimination between persons or property in like situation cannot be effected by classification, since there can be no reason therefor. Omissions from a class, of subjects that clearly belong to such class, makes the classification invalid."

The Michigan Supreme Court has held in substance that legislative classifications must be based upon substantial and natural differences which reasonably suggest the propriety of different treatment. See *Palmer Park Theatre Co v City of Highland Park,* 362 Mich 326; 106 NW2d 845 (1961), *Beauty Built Construction Co v City of Warren,* 375 Mich 229; 134 NW2d 214 (1965), *Fox v Employment Security Commission,* 379 Mich 579; 153 NW2d 644 (1967).

While we do not have a legislative history to assist us in determining legislative intent, it would seem that in drafting 1970 PA 174 the Legislature intended a formula which would distinguish between airports needing the tax exemption and airports not needing the tax exemption. The statute provides that in order to qualify as a concessionaire, a lessee or user must have "the exclusive right and duty to render a necessary or customary service". We think the Legislature determined that where a second user or lessee could be at-

tracted to an airport to render a customary service in competition with another service, that this fact alone is a good indication that the tax incentive is no longer needed to attract concessionaires to render necessary customer services. Clearly, since the airport authorities will necessarily control or regulate their concessionaires, to be certain that they render services at reasonable prices so as to encourage the use of the airport, there is little or no public interest to be served by the redundancy of customer services. Assuming without deciding that this was the Legislature's intent, such would clearly be a reasonable criterion for implementing a legislative policy of removing tax incentives from airport lessees and users when they are no longer needed to encourage airport development and air travel. This being so, however, we are unable to see any reason why the same formula should not apply equally in the other 82 counties in the State of Michigan. Since we are unable to discern real or substantial differences which reasonably suggest the propriety of substantially different treatment as between Wayne County airports and airports in other counties in Michigan, we must hold that 1970 PA 174 is constitutionally invalid as violative of Article 9, § 3 of the Michigan Constitution.

We think that the circuit judge was correct in determining that 1970 PA 174 contravenes Article 4, § 29 and Article 9, § 3 of the Michigan Constitution and is therefore invalid.

Affirmed.