HOUSTON v GOVERNOR

Docket Nos. 308724 and 308725. Submitted February 29, 2012, at
    Lansing. Decided March 7, 2012, at 9:00 a.m. Reversed, 491 Mich
    876.

    Frank Houston, Edna Freier, Christy Jenson, and others filed an
        action in the Ingham Circuit Court against the Governor and the
        Oakland County Board of Commissioners challenging the consti-
        tutionality of 2011 PA 280, which amended provisions of MCL
        46.401, MCL 46.402, and MCL 46.403. The act reduced the
        number of commissioners that a county with a population greater
        than 50,000 may have and provided for reapportionment in
        counties that were not in compliance with the newly reduced level
        of commissioners. In addition, the act changed the membership of
        the apportionment commission for certain counties. The amend-
        ments in effect reduced only the size of the Oakland County Board
        of Commissioners and required it to adopt a reapportionment plan
        for districts from which its members were elected. The court,
        William E. Collette, J., ruled that the act was unconstitutional and
        granted summary disposition in favor of plaintiffs. The court
        concluded that 2011 PA 280 was a local act that the Legislature
        had failed to enact in compliance with Const 1963, art 4, § 29; that
        it amounted to an unfunded mandate enacted in violation of the
        Headlee Amendment, Const 1963, art 9, § 29; and that it would
        not allow a proper opportunity for judicial review of the required
        new apportionment before the next election. The Oakland County
        Board of Commissioners (Docket No. 308724) and the Governor
        (Docket No. 308725) appealed.

        The Court of Appeals held:

        1. Const 1963, art 4, § 29 prohibits the Legislature from enact-
        ing a local or special act when a general act could be applicable.
        When a local or special act is passed, it may not take effect until ⅔
        of each house and a majority of the electors voting in the district
        affected approve it. Courts examine the substance of the act rather
        than its form when evaluating whether it is a local or special act.
        If a statute cannot apply to other units of government, it is not a
        general act. Moreover, when a statute can affect only one munici-
        pality within a specific time frame, the existence of practically

impossible scenarios by which the statute can apply to other municipalities does not remove the statute from being considered an unconstitutional local act. The circuit court properly determined that 2011 PA 280 violated Const 1963, art 4, § 29. The 30-day apportionment requirement in MCL 46.401(2) applied only to counties that were not in compliance with the act on the very day the act became effective, specifically, only to Oakland County. The act was therefore a local law because it was directed at, and applied only to, Oakland County.

2. Courts must uphold the constitutionality of an act to the greatest extent possible, and an entire act will not be invalidated if an offending provision can be severed from the act. The circuit court erred by invalidating 2011 PA 280 in its entirety. Because the first sentence of MCL 46.401(2), as amended by 2011 PA 280, which sets forth the procedure for reducing the number of commissioners if a county has more commissioners than allowed, constituted a local act that violated Const 1963, art 4, § 29, that sentence had to be struck from the act, but the remainder of the act was a valid statute of general application.

3. It was unnecessary to address the alternative bases offered by the circuit court for concluding that the act was unconstitutional.

Affirmed in part, reversed in part, and remanded for entry of an order invalidating the first sentence of MCL 46.401(2) but upholding the constitutionality of the remainder of the act.

METER, P.J., concurring in part and dissenting in part, would have held that 2011 PA 280 was constitutional in its entirety and reversed the circuit court's decision. Judge METER concluded that 2011 PA 280 was a general law because all counties are subject to the requirements of the act. In addition, he would have held that the circuit court erred by concluding that the act violated the Headlee Amendment and by holding that the act unconstitutionally deprived Oakland County electors of the right to seek judicial review of the reapportionment required by the act.

*Sachs Waldman* (by *Mary Ellen Gurewitz*) for Frank Houston, Edna Freier, Christy Jenson, Loretta Coleman, Jim Nash, David Richards, and Eric Coleman.

*Honigman Miller Schwartz & Cohn LLP* (by *John D. Pirich* and *Andrea L. Hansen*) for the Oakland County Board of Commissioners.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Ann M. Sherman* and *Christina M. Grossi*, Assistant Attorneys General, for the Governor.

Before: METER, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

M. J. KELLY, J. This case involves plaintiffs' challenge to the constitutionality of 2011 PA 280 (Public Act 280). The circuit court determined that Public Act 280 is unconstitutional and granted summary disposition in favor of plaintiff. The Oakland County Board of Commissioners appealed that order by right in Docket No. 308724, and the Governor appealed the same order by right in Docket No. 308725. We conclude that Public Act 280 contains a provision that constitutes a local act. Because the Legislature enacted Public Act 280 without complying with the requirements of Const 1963, art 4, § 29, that provision of the act is unconstitutional. Accordingly, while we agree with the circuit court's conclusion that a portion of Public Act 280 is unconstitutional, we do not agree that the whole act is therefore also unconstitutional. For that reason, we affirm in part, reverse in part, and remand this case to the circuit court.

### I. FACTUAL BACKGROUND

After the 2010 decennial census, but before the enactment of Public Act 280, the apportionment commission for Oakland County adopted a reapportionment plan for the Oakland County Board of Commissioners. The apportionment commission adopted the plan consistently with the statutory scheme applicable to the apportionment of county boards of commission-

ers. See MCL 46.401 *et seq.* Thereafter, the Legislature enacted Public Act 280, which the Governor signed on December 19, 2011.

With Public Act 280, the Legislature amended key provisions of MCL 46.401, MCL 46.402, and MCL 46.403. The Legislature amended MCL 46.401(1) to reduce the maximum number of commissioners that a county may have from 35 to 21. It also amended MCL 46.401 to include a new subsection, MCL 46.401(2), which provides for reapportionment in counties that were not in compliance with the newly reduced level of commissioners:

> If a county is not in compliance with [MCL 46.402] on the effective date of the amendatory act that added this subsection, the county apportionment commission of that county shall, within 30 days of the effective date of the amendatory act that added this subsection, apportion the county in compliance with [MCL 46.402]. For subsequent apportionments in a county that is apportioned under this subsection, the county apportionment commission of that county shall comply with the provisions of subsection (1).

In addition, the Legislature amended MCL 46.403(1) to change the membership of the apportionment commission for certain counties: "In a county with a population of 1,000,000 or more that has adopted an optional unified form of county government under 1973 PA 139, MCL 45.551 to 45.573, with an elected county executive, the county apportionment commission shall be the county board of commissioners."

The practical effect of these amendments was to reduce the Oakland County Board of Commissioners—and only the Oakland County Board of Commissioners—from 35 to 21 members and require the Oakland County Board of Commissioners to adopt a reapportionment plan for the districts from which its members will be elected.

The circuit court examined Public Act 280 and determined that it was unconstitutional on three grounds: it determined that Public Act 280 was a local act and that the Legislature had failed to enact it in compliance with Const 1963, art 4, § 29; that it amounted to an unfunded mandate enacted in violation of the Headlee Amendment, see Const 1963, art 9, § 29; and that it would not allow a proper opportunity for judicial review of the required new apportionment. As more fully explained below, we agree that Public Act 280 is unconstitutional in part because it is a local act that was enacted in contravention of Const 1963, art 4, § 29.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Similarly, this Court reviews de novo whether an act was enacted in violation of Michigan's Constitution. See *Taxpayers of Mich Against Casinos v Michigan*, 471 Mich 306, 317-318; 685 NW2d 221 (2004). This Court presumes that a statute is "constitutional unless its unconstitutionality is clearly apparent." *McDougall v Schanz*, 461 Mich 15, 24; 597 NW2d 148 (1999).

### B. LOCAL ACTS

Since the adoption of Michigan's 1908 Constitution, see Const 1908, art 5, § 30, there has been a provision limiting the Legislature's authority to enact local or special acts. With Const 1963, art 4, § 29, the people of this state provided that the Legislature "shall pass no local or special act in any case where a general act can

be made applicable" and, when the Legislature elects to pass a local or special act, the act shall not take effect "until approved by two-thirds of the members elected to and serving in each house and by a majority of the electors voting thereon in the district affected." The people adopted this limitation in order to prevent the Legislature's " 'pernicious practice' " of passing local acts, which amounted to " 'a direct and unwarranted interference in purely local affairs and an invasion of the principles of local self-government.' " *Advisory Opinion on Constitutionality of 1975 PA 301*, 400 Mich 270, 286; 254 NW2d 528 (1977), quoting *Attorney General ex rel Dingeman v Lacy*, 180 Mich 329, 337-338; 146 NW 871 (1914). This practice led to abuse because the " 'representatives from unaffected districts were usually complaisant, and agreed to its enactment without the exercise of that intelligence and judgment which all legislation is entitled to receive . . . .' " *Advisory Opinion*, 400 Mich at 286.

When evaluating whether an act is a local or special act, courts will examine the substance of the act rather than its form. *Rohan v Detroit Racing Ass'n*, 314 Mich 326, 349; 22 NW2d 433 (1946). Further, the fact that an act contains limitations—such as a population threshold—that appear to target a single municipality does not remove the act from general application if it is possible that another municipality or county might someday qualify for inclusion:

> The probability or improbability of other counties or cities reaching the statutory standard of population is not the test of a general law. In the above cases the acts were sustained as general upon the hypothesis that other municipalities would attain the provided population. By the same token, it must be assumed here that other counties will [meet the criteria.] Unless the act works under such conditions, it is a local, not

a general act. [*City of Dearborn v Wayne Co Bd of Supervisors*, 275 Mich 151, 157; 266 NW 304 (1936).]

"However, where the statute cannot apply to other units of government, that is fatal to its status as a general act." *Michigan v Wayne Co Clerk*, 466 Mich 640, 643; 648 NW2d 202 (2002).

In holding Public Act 280 to constitute an unconstitutional local act, the circuit court emphasized that on its effective date Public Act 280 will only affect Oakland County—Oakland County alone will lose commissioners and be required to undertake a second apportionment within 30 days of the act's effective date. To the extent that Public Act 280 requires reapportionment within 30 days of its enactment, we agree with the circuit court's conclusion that it is a local act. In this regard, we conclude that our Supreme Court's decision in *Wayne County Clerk* is dispositive.

In *Wayne County Clerk*, the Legislature enacted a public act that would have required the city of Detroit to place a proposal on the August 6, 2002, election ballot to change an at-large system of electing its city council to a single-member district plan of organization. *Wayne County Clerk*, 466 Mich at 641. The statute at issue in *Wayne County Clerk* did not mention Detroit by name. *Id.* at 642. Rather, it "purport[ed] to apply to any city with a population of more than 750,000 that has a nine-member at-large elected city council." *Id.* However, only Detroit met that population requirement. *Id.*

Our Supreme Court first recognized that population-based statutes "have been upheld against claims that they constitute local acts where it is possible that other municipalities or counties can qualify for inclusion if their populations change." *Id.* Nevertheless, the Court held that the statute at issue did not qualify as a general act because, even if another city reached the population

threshold of 750,000 and had a nine-member at-large council, the statute would not apply because of the requirement that the proposition appear on the August 6, 2002 ballot. Because there would not be a census before that date, no other city could meet the population requirement. *Id.* at 643. Accordingly, our Supreme Court concluded that the statute did not validly direct placement of the proposition on the August 6, 2002, ballot because it was not passed by a 2/3 vote of the Legislature as required by Const 1963, art 4, § 29. In other words, the statute at issue in *Wayne County Clerk* was unconstitutional because it was an improperly adopted local act. *Id.* at 643-644.

As in *Wayne County Clerk*, it is manifest that Public Act 280 is—at least in part—directed at a single locality: Oakland County. Oakland County alone would be required to reduce the number of members on its county board of commissioners and undertake a second reapportionment of its county board of commissioners within 30 days of the effective date of the act. Moreover, as in *Wayne County Clerk*, there is no realistically possible way in which any other locality could be affected by these requirements within that 30-day time frame.

Defendants attempt to refute this fact by imagining hypothetical situations in which other counties could enlarge the number of members on their county commissions and adopt new forms of county governance so as to become subject to the requirement of Public Act 280 that they reduce the size of their county commissions and undertake reapportionment. But defendants' attempts do not alter the fact that the first sentence of MCL 46.401(2), as amended by 2011 PA 280, will invariably apply only to Oakland County. It is implicit in the *Wayne County Clerk* holding that when a statute can affect only one municipality within a specific time

frame, *practically* impossible scenarios should not remove the statute from being considered an unconstitutional local act. Particularly, our Supreme Court considered it decisive that no other city could qualify under the statute "because there will be no new census before that date [August 6, 2002]." *Wayne Co Clerk*, 466 Mich at 643. Obviously, the statute at issue in *Wayne County Clerk* was passed before the August 6, 2002, election date that it implicated. And, at least in theory, one might imagine a scenario in which Congress required a new census to have been conducted in the interval between the passage of the statute at issue and the August 6, 2002, election. After all, US Const, art I, § 2, cl 3 does not preclude Congress from providing for a census to be conducted more frequently. But our Supreme Court did not adopt a test premised on such imaginings; rather, the Court recognized the practical reality that there would be no new census before August 6, 2002. We likewise decline defendants' invitation to consider strained and unrealistic scenarios in order to uphold the constitutionality of what is manifestly a local act.

For similar reasons, we must respectfully disagree with our dissenting colleague. The dissent notes that 1966 PA 261 had a similar 30-day provision for reapportionment, but the key difference here is that the other criterion in 1966 PA 261—namely the statement that it applied to counties with a population under 75,000—clearly rendered that apportionment requirement applicable to multiple counties. In contrast, because it applies only to counties that are not in compliance with the act *on the very day* that the act becomes effective, the 30-day apportionment requirement in Public Act 280 will plainly apply to only one county: Oakland County. MCL 46.401(2), as amended by 2011

PA 280.[1] Indeed, under the act's terms, even if every other county suddenly and miraculously became noncompliant on the day after the act became effective, those counties—unlike Oakland County—would not have to reduce their commissioners and reapportion until the time set for "subsequent apportionments," which can only mean the next decennial census. *Id.* Accordingly, we must conclude that the 30-day reapportionment requirement was intended to target Oakland County alone—and that makes it a local act.

### C. SEVERABILITY

Although we agree with the circuit court's conclusion that Public Act 280 is unconstitutional to the extent that it targets Oakland County alone, we do not agree that the remaining portions of the act constitute an impermissible local act. Because we must uphold the constitutionality of the act to the greatest extent possible, we will not invalidate the entire act if the offending provisions can be severed from the act. *Avis Rent-A-Car Sys, Inc v City of Romulus*, 400 Mich 337, 348-349; 254 NW2d 555 (1977). Because it is undisputed that it was not enacted in compliance with Const 1963, art 4, § 29, we hold that the first sentence of MCL 46.401(2), as amended by 2011 PA 280,[2] is uncon-

---

[1] This Court will not uphold an act as a general act when it is plain that the requirements are a "manifest subterfuge" designed to limit its application to only one locality. *Avis Rent-A-Car Sys, Inc v City of Romulus*, 400 Mich 337, 345 n 7; 254 NW2d 555 (1977) (noting that an act with a population requirement that does not provide for the inclusion of other localities as they reach the population requirement is a local act).

[2] This sentence reads: "If a county is not in compliance with [MCL 46.402] on the effective date of the amendatory act that added this subsection, the county apportionment commission of that county shall, within 30 days of the effective date of the amendatory act that added this

stitutional and should be struck from the act. In all
other respects, Public Act 280 is a valid statute of
general application.

### III. CONCLUSION

For these reasons, we affirm the circuit court's grant
of summary disposition with respect to the unconstitu-
tionality of the first sentence of MCL 46.401, as
amended by 2011 PA 280, as an improperly enacted
local act. However, we do not agree that the remaining
provisions of the act are invalid on the same basis; those
provisions are sufficiently general to have been passed
without meeting the requirements of Const 1963, art 4,
§ 29. Moreover, given our resolution of this issue, we
need not address the alternate bases proffered by the
circuit court for concluding that 2011 PA 280 is uncon-
stitutional. The practical effect of our decision today is
to permit Oakland County to retain its current level of
commissioners and its current apportionment until
after the next decennial census.[3] As such, the trial
court's concerns about an unfunded mandate and the
lack of judicial oversight of the reapportionment pro-
cess are no longer of concern. Therefore, we conclude
that the circuit court erred to the extent that it invali-
dated the entire act as unconstitutional. For these
reasons, we affirm the circuit court's order in part,
reverse it in part, and remand for entry of an order

---

subsection, apportion the county in compliance with [MCL 46.402]."
MCL 46.402, as amended by 2011 PA 280.

   [3] The remaining provision of MCL 46.401(2), as amended by 2011 PA
280, states: "For subsequent apportionments in a county that is appor-
tioned under this subsection, the county apportionment commission of
that county shall comply with the provisions of subsection (1)." Thus,
Oakland County will not have to comply with amended MCL 46.401,
which incorporates amended MCL 46.402, until the next reapportion-
ment.

invalidating the offending sentence of the act, but otherwise upholding the constitutionality of the act.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Because there were important issues of public concern, we order that no party may tax its costs. MCR 7.219(A).

RONAYNE KRAUSE, J., concurred with M. J. KELLY, J.

METER, P.J. (*concurring in part and dissenting in part*). Because I believe that 2011 PA 280 is constitutional in its entirety, I respectfully dissent from the part of the majority opinion that invalidates the first sentence of MCL 46.401(2). I would reverse the decision of the circuit court and uphold the act as written.

In concluding that the first sentence of MCL 46.401(2), as amended by 2011 PA 280, is unconstitutional as an improperly adopted local law, the majority finds dispositive *Michigan v Wayne Co Clerk*, 466 Mich 640; 648 NW2d 202 (2002). The statute at issue in that case applied to a city with a population of 750,000 or more with a city council composed of nine at-large council members. *Id.* at 642. Only Detroit met the criteria and thus was required to place a particular question on the ballot at the August 6, 2002, general election. *Id.* The Supreme Court, in deciding whether the statute was a general or local act, stated:

> In this case, the statute plainly fails to qualify as a general act. Even if another city reaches a population of 750,000, and has a nine-member at-large council, [2002 PA] 432 would not apply because of its requirement that the proposition appear on the ballot at the August 6, 2002, election. No other city can meet that requirement because there will be no new census before that date. [*Id.* at 643.]

MCL 46.401, as amended by 2011 PA 280, provides:

(1) Within 60 days after the publication of the latest United States official decennial census figures, the county apportionment commission in each county of this state shall apportion the county into not less than 5 nor more than 21 county commissioner districts as nearly of equal population as is practicable and within the limitations of [MCL 46.402].

(2) If a county is not in compliance with [MCL 46.402] on the effective date of the amendatory act that added this subsection, the county apportionment commission of that county shall, within 30 days of the effective date of the amendatory act that added this subsection, apportion the county in compliance with [MCL 46.402]. For subsequent apportionments in a county that is apportioned under this subsection, the county apportionment commission of that county shall comply with the provisions of subsection (1).

MCL 46.402, as amended by 2011 PA 280, provides:

| County Population | Number of Commissioners |
| --- | --- |
| Under 5,001 | Not more than 7 |
| 5,001 to 10,000 | Not more than 10 |
| 10,001 to 50,000 | Not more than 15 |
| Over 50,000 | Not more than 21 |

MCL 46.403(1), as amended by 2011 PA 280, states:

Except as otherwise provided in this subsection, the county apportionment commission shall consist of the county clerk, the county treasurer, the prosecuting attorney, and the statutory county chairperson of each of the 2 political parties receiving the greatest number of votes cast for the office of secretary of state in the last preceding general election. If a county does not have a statutory chairperson of a political party, the 2 additional members shall be a party representative from each of the 2 political parties receiving the greatest number of votes cast for the office of secretary of state in the last preceding general

election and appointed by the chairperson of the state
central committee for each of the political parties. In a
county with a population of 1,000,000 or more that has
adopted an optional unified form of county government
under 1973 PA 139, MCL 45.551 to 45.573, with an elected
county executive, the county apportionment commission
shall be the county board of commissioners. The clerk shall
convene the apportionment commission and they shall
adopt their rules of procedure. A majority of the members
of the apportionment commission shall be a quorum suffi-
cient to conduct its business. All action of the apportion-
ment commission shall be by majority vote of the commis-
sion.

There is a fundamental difference between the stat-
ute at issue in *Wayne County Clerk* and 2011 PA 280.
The crux of the statute as discussed in *Wayne County
Clerk* was the requirement that a certain question be
placed on the ballot on August 6, 2002. *Wayne Co Clerk*,
466 Mich at 642. Because of this temporal limitation, it
was not possible for a city other than Detroit to be
subject to the requirement of the statute. *Id.* at 642-
643. All counties, by contrast, are subject to the require-
ments of 2011 PA 280. As stated by the Oakland County
Board of Commissioners on appeal: "The [number] of
allowable commissioners applies immediately to every
county with a population over 50,000, which includes
multiple counties, not just Oakland County. There are
at least 35 counties that this limitation will apply to
upon the effective date, and it will continue to apply to
every county that ever reaches 50,000 in the future."
While the ballot requirement in *Wayne County Clerk*
applied only to Detroit, the limitation on commissioners
at issue here *applies to multiple counties*. It is a general
law, not a local law.[1]

---

[1] Even if I were to focus on the action of "reduction" in determining
whether the act, or whether the first sentence of MCL 46.402(2), is

The circuit court focused, as does the majority, on the procedural requirement stating that

> [i]f a county is not in compliance with [MCL 46.402] on the effective date of the amendatory act that added this subsection, the county apportionment commission of that county shall, within 30 days of the effective date of the amendatory act that added this subsection, apportion the county in compliance with [MCL 46.402].

A similar 30-day requirement was included in the county apportionment act as originally enacted. 1966 PA 261.[2] The act stated, in part:

> In counties under 75,000, upon the effective date of this act, the boards of supervisors of such counties shall have not to exceed 30 days into [sic] which to apportion their county into supervisor districts in accordance with the provisions of this act. If at the expiration of the time as set forth in this section a board of supervisors has not so apportioned itself, the county apportionment commission shall proceed to apportion the county under the provisions of this act. [MCL 46.401, as added by 1966 PA 261.]

---

general or local—i.e., even if I were to conclude that a "reduction" of commissioners by multiple counties must be necessary in order for the act or the sentence to be a general law—it would be possible for a county such as Wayne to modify its charter before the effective date of 2011 PA 280 to have more than 21 commissioners and thus be required to undertake a "reduction." Unlike the majority, I do not find this possibility akin to the possibility of a new census occurring in *Wayne County Clerk*. In *Wayne County Clerk*, the act in question was passed in 2002, with an effective date of June 6, 2002. See 2002 PA 432. It was fundamentally impossible that a time-consuming new census could have been completed before the August 6, 2002, election referred to in the act. See *Wayne Co Clerk*, 466 Mich at 643.

[2] I include this information not to imply, misleadingly, that the 30-day provision in 1966 PA 261 applied to only one county but instead to illustrate that in enacting 2011 PA 280 the Legislature was following a template, including an immediate compliance provision, set forth years ago for the county apportionment act.

In *Kizer v Livingston Co Bd of Comm'rs*, 38 Mich App 239, 246; 195 NW2d 884 (1972), the Court analyzed the county apportionment act and considered whether the 30-day period that allowed for self-apportionment applied only to the time immediately following the enactment of the statute or whether it applied after each census. The Court concluded that the 30-day period was a single exception allowing for self-apportionment for 30 days after enactment of the statute. *Id.* at 256. In *In re Apportionment of Tuscola Co Bd of Comm'rs 2001*, 466 Mich 78, 84 n 6; 644 NW2d 44 (2002), the Michigan Supreme Court expressed "concerns" about the holding in *Kizer* but declined to resolve the issue anew. 2011 PA 280 sets forth a clearer directive with regard to the 30-day compliance period following the effective date of the act. I cannot conclude that the inclusion of a compliance provision for the period immediately following the effective date of the act somehow transforms this general act, or a part of this general act, into a local act that must be voided. As noted in *Chamski v Wayne Co Bd of Auditors*, 288 Mich 238, 258; 284 NW 711 (1939), statutes should be construed, if possible, to give full effect to every provision.

*Chamski* is a somewhat analogous case. In *Chamski*, the Michigan Supreme Court considered whether a statute that related to the selection and number of probate judges and that contained certain population classifications was a general act or an invalid local act. *Id.* at 253, 257. Although the Court did not provide a particularly detailed analysis concerning the applicability of the law to various counties, it did conclude that because "[t]he act in question provides a specific method for its application to other counties as they acquire greater population," it came within the rule specifying that an act applying to only one city or

county may nonetheless be valid as a general act if it could, in the future, apply to others. *Id.* at 256-257. The Court also stated:

> It is contended by plaintiff the "open end" provided in the act is closed by operation of two clauses contained therein, one that:
>
> "A selection as herein provided shall be made within fifteen days of the effective date of this act;"
>
> and the other:
>
> "*Provided,* That any county that has failed to elect an additional probate judge, or judges, under this section, prior to July one, nineteen hundred thirty-two, shall be not entitled to elect any additional judge, or judges, under the provisions of this section." [*Id.* at 257.]

The Court stated that "[i]f the legislature had intended the above clauses to prevent inclusion of counties subsequently acquiring the required population, it would not have provided a method for such inclusion" and that "[t]he clauses pointed out were to promote speedy action on the part of counties having the required population." *Id.* at 257-258. The Court held the act in question constitutional. *Id.* at 258.

Although I conclude above that the 21-commissioner limit at issue in the present case clearly applies to multiple counties *already*, 2011 PA 280 also provides a mechanism for counties to be reevaluated in the future to ensure that they comply with the various commissioner limits. There must be a certain reapportionment within 30 days of the effective date of 2011 PA 280, but 2011 PA 280 also provides a mechanism for reapportionments in the future. As such, 2011 PA 280 as a whole falls within the general parameters of the *Chamski* holding and is constitutional.

MCL 46.403(1), as amended by 2011 PA 280, provides that "[i]n a county with a population of 1,000,000 or more that has adopted an optional unified form of county government under 1973 PA 139, MCL 45.551 to 45.573, with an elected county executive, the county apportionment commission shall be the county board of commissioners." This provision, too, is a general law, not a local law. As again aptly stated by the Oakland County Board of Commissioners on appeal, the requirement

> concerning the composition of the county apportionment commission applies to each and every county that ever meets the three stated requirements and there is no time limitation for doing so. Because multiple counties could easily achieve this result,[3] certainly by the next census, 2011 PA 280 easily passes the 'test' for a general law . . . .

*Wayne County Clerk* and *Chamski* are applicable to MCL 46.403, as amended by 2011 PA 280, and indicate that this section is constitutional.

I conclude that the circuit court erred by ruling that 2011 PA 280 is unconstitutional as an improperly enacted local act. My conclusion is informed in part by the axiom that "[s]tatutes . . . must be construed in a constitutional manner if possible." *Gora v City of Ferndale*, 456 Mich 704, 711; 576 NW2d 141 (1998). As noted in *City of Owosso v Pouillon*, 254 Mich App 210, 213; 657 NW2d 538 (2002), "[s]tatutes are presumed to be constitutional unless their unconstitutionality is clearly apparent." I find no clearly apparent unconstitutionality in assessing whether any part of 2011 PA 280 constitutes a local act.

---

[3] By upholding MCL 46.403, the majority implicitly concludes that multiple counties could achieve this result, but it simultaneously concludes that it will be impossible for a county such as Wayne to enlarge its number of commissioners before the effective date of 2011 PA 280.

I also conclude that the circuit court erred by deeming 2011 PA 280 unconstitutional as a violation of the Headlee Amendment, Const 1963, art 9, § 29. The Headlee Amendment provides, in relevant part:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. [Const 1963, art 9, § 29.]

By the plain language of the Headlee Amendment, the state is only required to reimburse a locality for "any necessary increased costs" of a new activity or service or an increase in the level of an activity or service required by a new law adopted by our Legislature. Perhaps the reapportionment of the Oakland County Board of Commissioners required by 2011 PA 280 could be considered a "new activity" because it requires a second or replacement reapportionment in accordance with the new requirements for county commissions adopted by the act. I will assume as much, without actually deciding the issue. Nevertheless, reasonably considered, 2011 PA 280 does not impose "any necessary increased costs" on Oakland County. Considering the aggregate effect of the reapportionment, it is beyond any reasonable question that the cost reduction to Oakland County for county commissioner salaries resulting from the reduction of the Oakland County Board of Commissioners from 35 to 21 members will far outweigh the relatively minimal cost of the reapportionment.

At least implicitly, the circuit court's conclusion to the contrary depends on considering the costs of the initial and mechanical aspects of the reapportionment process for Oakland County under 2011 PA 280 as a distinct activity in isolation from the savings flowing to the county from the reduction in size of the county commission under that reapportionment. I simply do not believe that is a reasonable analysis. The overall activity required of Oakland County by 2011 PA 280 is to reduce the membership of its county commission from 35 to 21 members and carry out redistricting as provided for in the act to achieve that requirement. It was unreasonable for the circuit court to disaggregate the minimal costs associated with the redistricting from the substantial savings that will be achieved by that redistricting in considering the costs of this new activity.[4] Indeed, the " 'Headlee [Amendment], at its core, is intended to prevent attempts by the Legislature "to shift responsibility for services to the local government . . . in order to save the money it would have had to use to provide the services itself." ' " *Owczarek v Michigan*, 276 Mich App 602, 611; 742 NW2d 380 (2007), quoting *Adair v Michigan*, 470 Mich 105, 112; 680 NW2d 386 (2004), quoting *Judicial Attorneys Ass'n v Michigan*, 460 Mich 590, 602-603; 597 NW2d 113 (1999). It is plain that this purpose would not be served by regarding a redistricting requirement that neither shifts state government services onto a locality nor increases aggregate costs to that

---

[4] To use an analogy, if a new state law required localities to send certain notices via e-mail that had previously been required by state law to be sent via ordinary mail through the postal service with a resulting cost savings to the localities from substantially reduced postage expenses, it would be absurd to regard any initial cost to the localities from buying the necessary software for the e-mail system as a distinct new activity for which the state would have to reimburse the localities under the Headlee Amendment.

locality as involving increased costs for which the state must reimburse the locality.

I also reject the circuit court's conclusion that 2011 PA 280 unconstitutionally deprives Oakland County electors of a right to seek judicial review of the reapportionment required by the act. The circuit court's entire analysis of this issue was predicated on the act's not allowing an elector the full 30-day period provided for by MCL 46.406 to seek review in this Court of a plan for reapportionment of a county commission.[5] However, MCL 46.406 is merely a *statutory* provision, not a constitutional one. The circuit court cited nothing to establish that there is a *constitutional* right to a 30-day period for an elector to seek judicial review of a county commission reapportionment plan, and I am confident that no constitutional provision has been interpreted to provide such a specific time requirement. Moreover, it appears undisputed that Oakland County has adopted resolutions providing for the reapportionment process to be completed by April 27, 2012, which would still provide significant time for judicial review before the May 15, 2012, filing deadline for candidates for the August 2012 primary election. In any event, any claim of a constitutional deprivation of a right to judicial review by 2011 PA 280 would not be ripe until and unless circumstances actually arise in which an elector seeks such review of an actual reapportionment plan and then contends that there is inadequate time for

---

[5] MCL 46.406 states:

Any registered voter of the county within 30 days after the filing of the plan for his county may petition the court of appeals to review such plan to determine if the plan meets the requirements of the laws of this state. Any findings of the court of appeals may be appealed to the supreme court of the state as provided by law.

proper judicial review. See *Citizens Protecting Michigan's Constitution v Secretary of State*, 280 Mich App 273, 282; 761 NW2d 210, aff'd on other grounds 482 Mich 960 (2008) (noting that a claim is not ripe "if it rests upon contingent future events that may not occur as anticipated, or may not occur at all").

I would reverse in its entirety the circuit court's finding of unconstitutionality.